IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03678-PAB-SKC

ELIJAH MCKNIGHT,

    Plaintiff,

v.

SHERIFF TYLER BROWN, in his official capacity, et al.

    Defendants.

---

ORDER RE: DEFENDANTS' MOTION TO COMPEL [DKT. 56]

---

Before the Court is Defendants' Motion to Compel [Dkt. 56]. Chief District Judge Brimmer referred the Motion to the magistrate judge. This Court has reviewed the Motion and related briefing, the exhibit attachments, the docket, and applicable case law. No hearing is necessary.

In relevant part, Mr. McKnight brings this 42 U.S.C. § 1983 action based on his encounter with the Arapahoe County Sheriff Defendants, which resulted in him being arrested and injected with 500mg of Ketamine. Mr. McKnight alleges excessive force by two of the Sheriff's Deputies over their use of physical force while attempting to arrest him. According to the Motion, Mr. McKnight faces pending criminal charges in Arapahoe County which allege his assault of the two Sheriff's Deputies. Mr. McKnight has yet to be arraigned in his criminal case, and his attorneys have moved

1

to continue those proceedings a number of times because of this civil case. No trial date is set in the criminal case. Mr. McKnight has opposed a stay of this civil case.

When Defendants deposed Mr. McKnight in this case, he refused to answer various questions on Fifth Amendment grounds. The Motion seeks to compel Mr. McKnight's deposition testimony arguing he "is not entitled to refuse to answer virtually every question regardless of whether the question relates at all to his criminal charges."

## Legal Principles

Parties in federal court may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* A party moving to compel discovery under Rule 37 "must prove that the opposing party's answers are incomplete[,]" and the "party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Rule 26(b)(1)." *Tara Woods Ltd. P'ship v. Fannie Mae*, 265 F.R.D 561, 566 (D. Colo. 2010). Whether the court should compel discovery responses is within its sound discretion. *See Robison v. Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966).

## Analysis

Defendants argue Mr. McKnight "improperly and overbroadly" asserted the Fifth Amendment during his deposition. Mr. McKnight's pending criminal charge(s)

involves his alleged assault of the deputies during his arrest; therefore, Defendants argue, "only questions that would implicate those charges might be subject to the Fifth Amendment and Plaintiff's counsel's blanket assertion of the privilege was improper." With pinpoint citations to the deposition transcript, Defendants point out that Mr. McKnight asserted the privilege in response to background questions and questions about his past criminal history and other arrests, substance abuse history, discussions with the media and others about the incident, actions of the former South Metro Fire Rescue (SMFR) Defendants, and his claimed damages and injuries.

Mr. McKnight's counsel filed their *two-page* response[1] to the Motion *three weeks* past the deadline to respond. [Dkt. 68.] They did so without comment as to the late filing and without seeking leave of court. Therefore, the Court declines to consider the response and orders it STRICKEN. Fed. R. Civ. P. 12(f)(1).

It is evident from the record and deposition transcript that the bases for Mr. McKnight's assertion of his Fifth Amendment privilege was variously that, because he faces criminal charges, he could possibly perjure himself by giving false information or he could be later impeached with statements from his deposition. His counsel posed the following hypothetical during the deposition: "So hypothetically, let's say he answers, 'I went to Drew's Bar.' And later on, there's information that he went to Teddy's Bar. That information could be (sic) then be used to impeach him."

---

[1] The response is actually three total pages, but the third page is merely the signature page and the certificate of service.

[Dkt. 56 p.8.] His counsel also stated it this way: "Because if he is asked later and if, for whatever reason, let's say—I'm not saying it would be, but his answers weren't consistent, then that could be used for impeachment purposes[,]" and, "It's not about whether he's criminally prosecuted. It's about whether at his prosecution, if the prosecution takes place, he is – he is impeached or his character is somehow impeached." [*Id.* at p.9.]

This argument is confounding. The risk of being impeached with testimony provided under oath is not a basis for asserting the Fifth Amendment privilege against self-incrimination. Instead, "[t]he privilege against self-incrimination protects the person claiming it from being compelled to give 'answers that would in themselves support a conviction' or that 'would furnish a link in the chain of evidence needed to prosecute the claimant' for a crime." *United States v. Jones*, 703 F.2d 473, 475–76 (10th Cir. 1983) (quoting *Hoffman v. United States*, 341 U.S. 479 (1951)). It isn't enough that the witness fears incrimination from answering questions, rather, the "fear must be reasonable in light of the witness' specific circumstances, the content of the questions, and the setting in which the questions are asked." *Id.*

The privilege only protects against real danger of incrimination and not remote possibilities. *Id.* And, no doctrine of "anticipatory perjury" exists. *United States v. Apfelbaum*, 445 U.S. 115, 131 (1980). Nor may a witness voluntarily testify about a subject then invoke the Fifth Amendment when asked about the details. *Mitchell v. United States*, 526 U.S. 314, 321 (1999).

4

### 1. Questions Re: His Background

Mr. McKnight asserted the privilege to basic background questions which asked things such as, what documents he reviewed to prepare for his deposition, his current residence, and his employment history. Without more, nothing in this line of questioning requires Mr. McKnight to give answers that would either support a criminal conviction for allegedly assaulting the deputies or furnish a link in the chain of evidence needed to prosecute him for that crime. *Jones*, 703 F.2d at 475. His invocation of the Fifth Amendment as to basic background questions was improper. There is no real danger of incrimination in responding to these questions.

### 2. Questions Re: His Past Criminal History and Other Arrests

These questions focus on criminal matters that have already occurred in the past. Without more, Mr. McKnight's deposition testimony about criminal matters that have already resolved does not implicate his privilege against self-incrimination. *Mitchell*, 526 U.S. at 326 ("It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final."); *In re Lindsey*, 229 B.R. 797, 802 (B.A.P. 10th Cir. 1999) ("Clearly, if there is a conviction, the privilege ceases to apply. If Joseph has not been convicted of a crime, he has no reason to fear incrimination. Joseph has shown no 'real danger.'"); *Beller v. United States*, No. CV 02-1368 WPJ/LFG, 2003 WL 27385032, at *5 (D.N.M. July 1, 2003) ("[I]t is unlikely that the discussion of

5

information already known to the government would demonstrate a 'real and appreciable risk' of self incrimination."). Mr. McKnight's invocation of the Fifth Amendment to avoid answering questions about his prior criminal history or arrests was improper as a result.

But Defendants have not demonstrated the relevance of Mr. McKnight's prior criminal history or his prior arrests, other than any criminal convictions consistent with Fed. R. Evid. 609. Defendants are entitled to depose Mr. McKnight only over any prior criminal convictions consistent with Fed. R. Evid. 609, and, for the reasons stated above, the Fifth Amendment privilege does not apply to those questions.

### 3. Questions Re: His History of Substance Abuse

Defendants also fail to demonstrate the relevance of Mr. McKnight's prior history of substance abuse. The fact he may have been intoxicated at the time of his arrest does not, on its own, open the door on Mr. McKnight's alleged history of substance abuse, alcoholism, or his drinking habits.

The only relevant drinking history to this case would be Mr. McKnight's drinking which led to the police contact and his arrest. *See* Fed. R. Evid. 401 (defining relevance). But Mr. McKnight properly invoked his Fifth Amendment privilege as to questions regarding that particular episode of drinking. Mr. McKnight faces criminal assault charges regarding his altercation with deputies at a time when he was apparently intoxicated. Testimony concerning his intoxication associated with the alleged assault presents a real danger of self-incrimination that could support a

6

criminal conviction, or at a minimum, could furnish a link in the chain of evidence needed to support his prosecution for the crime. This is particularly true where the Defendants describe Mr. McKnight as having "had dangerously high levels of alcohol in his system on the day of his arrest." [Dkt. p.6.]

### 4. Questions Re: the Actions of the former SMFR Defendants

The SMFR Defendants were dismissed from this case, with prejudice. Defendants posed deposition questions to Mr. McKnight about the SMFR Defendants' decision to give Mr. McKnight ketamine, the dosage he was given, and whether Mr. McKnight was experiencing "excited delirium." The Court has two concerns with this questioning. First, the better source of testimony for whose decision it was to give Mr. McKnight ketamine, the dosage he was given, and whether he was experiencing "excited delirium" would be the SMFR medical professionals who made those decisions. There are thus more reliable and alternative sources for this information.

Second, Mr. McKnight's own testimony about the dosage he was given (if he knows) or whether he was experiencing "excited delirium" raises credible self-incrimination concerns. Excited delirium is not universally accepted as a genuine medical condition; it is generally defined as a condition that results in a person exhibiting extremely agitated and aggressive behavior, often in relation to drug use or mental illness. https://www.dictionary.com/e/tech-science/excited-delirium/ (last accessed 2/9/2022). Similar to the Court's above-analysis regarding testimony about Mr. McKnight's intoxication at the time of his arrest, testimony concerning his

7

alleged experience with "excited delirium" during the incident presents a real danger of self-incrimination that could either support a criminal conviction for his alleged assault of the deputies or serve as a link in the chain of evidence to support his prosecution. Mr. McKnight properly invoked his Fifth Amendment privilege as concerns this line of questioning.

### 5. Questions Re: His Damages and Injuries

Mr. McKnight cannot use his privilege against self-incrimination as a sword and a shield by claiming $600,000 in damages for "impairment of quality of life, emotional distress, anger, outrage, humiliation, disappointment, frustration, fear, anxiety, depression, psychological, hedonic and other injuries[,]" and $300,000 in "[e]conomic damages, including for reasonable out-of-pocket expenses, expenses for medical treatment and lost wages[,]" [Dkt. 35, p.7], but then refuse to provide testimony about the damages he seeks. *Cf. Stephens v. Kern*, No. 3:17-CV-00952, 2019 WL 611510, at *13 (S.D.W. Va. Jan. 17, 2019), *report and recommendation adopted*, No. CV 3:17-0952, 2019 WL 609647 (S.D.W. Va. Feb. 13, 2019) ("'A party's silence ... may bar that party from asserting facts which would allow him to prevail in litigation which will have severe financial consequences for the loser. Silence may also create inferences which are relevant and adverse to the party maintaining such silence.'") (quoting *In re Grand Jury Subpoena*, 836 F.2d 1468, 1472 (4th Cir. 1988)).

Mr. McKnight provided his computation of damages in the proposed Scheduling Order [Dkt. 31, p.7] he filed, and presumably provided the same

8

calculation to Defendants with his Rule 26(a)(1) Disclosures. "It would be unfair to Defendants if Plaintiff could submit a specific dollar amount for damages to the jury without Defendant having had the opportunity to discover the basis for the claim and the opportunity before trial to rebut that basis." *Montoya v. Retiree Health Care Auth.*, No. 18-cv-578 JCH/JFR, 2019 WL 2718689, at *6 (D.N.M. June 7, 2019), *report and recommendation adopted*, 2019 WL 2717115 (D.N.M. June 28, 2019).

Further, the Court does not find questions regarding Mr. McKnight's claimed damages and injuries present a real danger of incrimination for Mr. McKnight. The identified categories of damages for the $600,000 he seeks involve things Mr. McKnight claims he has experienced since the incident—for example, how his life has been impaired, or the emotional distress or psychological suffering he's experienced post-incident. And the $300,000 in claimed economic damages similarly involves losses Mr. McKnight incurred post-incident. Because his claimed damages and injuries involve categories which manifested after the incident (albeit, allegedly caused by it), the Court does not find a real danger of self-incrimination.

The only damage category which could potentially raise a real Fifth Amendment concern is the category for expenses of medical treatment. Testimony about *how* Mr. McKnight incurred certain injuries leading to specific medical treatment he received from the incident might raise a real danger of self-incrimination related to his pending assault charge or serve as a link in the chain of evidence to a conviction. But the devil will be in the details; whether there is a real

9

danger of self-incrimination will depend on the specific questions posed. For example, there is a danger involving questions over *how* Mr. McKnight received certain injuries he claims, versus questions regarding *what* injuries he claims.

## 6. Defendants' Waiver Argument, including Questions about His Conversations with Media and Family about the Incident

Citing specific interrogatory answers, Defendants argue Mr. McKnight waived his privilege against self-incrimination as regards his employment history, actions on the day of his arrest prior to the arrest, his injuries, and SMFR's decision to administer ketamine to him following his arrest. The Court has reviewed those interrogatory responses and finds they do not effectuate a waiver primarily because, inexplicably, Mr. McKnight did not verify his interrogatory answers under oath, nor did Defendants take steps to procure his verified responses. Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.").

Waiver in this context only applies to a witness's prior voluntary *testimonial* statements. *See Mitchell*, 526 U.S. at 321 ("It is well established that a witness, in a single proceeding, may not *testify* voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details.") (emphasis added); *Jones v. Conte*, No. C 04-5312 SI, 2005 WL 1287017, at *1 (N.D. Cal. Apr. 19, 2005) ("In the current case, defendant has not submitted deposition testimony or sworn statements in any 'proceeding'; therefore, defendant retains full protection

10

under the Fifth Amendment."). Mr. McKnight's interrogatory responses do not serve a testimonial purpose because they are not verified under oath. [Dkts. 56-3, p. 9; 56-4, p.5.] Likewise, any statements he made to reporters or family members about the case similarly served no testimonial purpose. And because the waiver of constitutional rights is never inferred lightly, the Court declines to find waiver under the circumstances presented here. *See Smith v. United States*, 337 U.S. 137, 150 (1949) ("Waiver of constitutional rights, however, is not lightly to be inferred. A witness cannot properly be held after claim to have waived his privilege and consequent immunity upon vague and uncertain evidence.").

\* \* \*

Based on the above, it is ORDERED the Motion to Compel is PARTIALLY GRANTED: Mr. McKnight may not validly assert the Fifth Amendment privilege to avoid answering (a) basic background questions, (b) questions concerning his criminal convictions (if any) consistent with Fed. R. Evid. 609; and (c) questions regarding his damages and injuries claimed in this case.

FURTHER ORDERED the Motion is PARTIALLY DENIED: Mr. McKnight shall not be compelled to answer questions regarding his prior substance abuse history, drinking history, or his drinking/intoxication leading to, and at the time of, his arrest; and questions about the actions of the former SMFR Defendants.

FURTHER ORDERED the Parties shall reschedule Mr. McKnight's deposition so that it is completed no later than 30 days from the date of this Order. And,

pursuant to Fed. R. Civ. P. 37(c)(1)(A), it is ORDERED that the parties shall share equally in the cost of the second deposition (excluding attorney's fees incurred) of Mr. McKnight in light of the Court's finding that some of Mr. McKnight's claims of privilege were well-founded, while others were not.

DATED: February 17, 2022

BY THE COURT:

S. Kato Crews
United States Magistrate Judge